## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Case No. 15-MJ-0109** |
| vs. | **ORDER FOR PRETRIAL DETENTION** |
| **DeSHAUN ANDERSON,** | |
| **Defendant.** | |

On the 29th day of April, 2015, this matter came on for hearing on the Government's request to have the Defendant detained pending further proceedings and the Defendant's request for a preliminary hearing. The Government was represented by Assistant United States Attorney Dan Chatham. The Defendant appeared personally and was represented by his attorney, F. Montgomery Brown.

## I. RELEVANT FACTS AND PROCEEDINGS

On April 24, 2015, Defendant DeShaun Anderson was charged by Criminal Complaint (docket number 2) with possession with intent to distribute heroin. The Government did not offer any testimony at the time of hearing, relying instead on the Criminal Complaint and supporting Affidavit (Government's Exhibit 1) and the pretrial services report. Defendant called DEA Special Agent Gregg J. Fox, the affiant, to testify. Defendant also called his mother, Ethyl Gordon, to testify that he could live with her in Chicago if he is released.

On April 13, 2015, Investigator Nick Nolte of the Cedar Rapids Police Department spoke with a victim of a heroin overdose at the Linn County Jail. The inmate told Nolte that an African American male, who goes by the name "Shady," was selling heroin in

Cedar Rapids. The inmate told Nolte that "Shady" sells the heroin out of his vehicle, and gave a description of the vehicle, including a partial license plate number.

Also on April 13, officers from the Cedar Rapids Police Department responded to a report of two heroin overdoses at the Westdale Court Apartments in Cedar Rapids. One of the overdose victims was interviewed at the hospital, and told officers that he had purchased the heroin from "Shady" near the intersection of 22nd Avenue and Wiley Boulevard. The witness also told investigators that he purchased the heroin using money provided by the second overdose victim, and the heroin was then shared between them. Because of the second victim's medical condition, he could not be interviewed. The second victim died two days later.

Also on April 13, Investigator Bailey of the Cedar Rapids Police Narcotics Unit located a vehicle matching the description given by the jail inmate in the area of 22nd Avenue and Wiley Boulevard. The vehicle was registered to Defendant and showed an address on 22nd Avenue.

The next day, April 14, Investigator Nolte returned to the Linn County Jail and showed the inmate a photo of Defendant. The inmate identified Defendant as "Shady." The inmate also told Nolte that he had seen Defendant at a white house near the intersection of A Avenue and 13th Street.

Investigators then set up surveillance in two locations: near the intersection of 22nd Avenue and Wiley Boulevard, and near the intersection of A Avenue and 13th Street. At approximately 12:45 p.m., Investigator Nolte observed a vehicle matching the description of Defendant's vehicle pull into the driveway of a residence on 13th Street. A female exited the house and got into the front passenger seat of the vehicle. After three or four minutes, the female exited the vehicle and went back into the house. The female was holding her left elbow in a bent position with her left hand up near her head, which Agent Fox believes is consistent with an individual who had just intravenously used drugs.

2

Investigator Nolte followed the vehicle as it left the area, and confirmed by the license plate that it was Defendant's vehicle. The vehicle had an expired registration and, therefore, Nolte called a marked Cedar Rapids Police vehicle to conduct a traffic stop. Defendant was stopped and was asked to exit the vehicle. During a pat-down of Defendant's person, Office Kaczinski felt a bulge in Defendant's left sock. When the officer pulled the sock down, it revealed baggies containing a white rock substance. Defendant then reached down, grabbed the substance, and placed it in his mouth. Several baggies were retrieved from Defendant's mouth, but according to Defendant, he swallowed three baggies containing heroin and crack cocaine. He was transported to Mercy Hospital, where he apparently remained for three days.

A search of Defendant's vehicle revealed additional baggies containing heroin. Officers also found $3,600 in United States currency, an empty handgun case, a cell phone, and identification documents related to Defendant. A subsequent search of the cell phone pursuant to a state search warrant revealed text messages consistent with dealing controlled substances. There were also photos on the phone showing Defendant displaying large amounts of United States currency, marijuana, and holding a handgun.

On April 16, a federal search warrant was executed at Defendant's residence. Among other things, investigators found 12 smaller baggies of suspected cocaine. Investigators also found EBT cards bearing the names of individuals with initials L.M. and B.E. Agents knew that L.M. had recently died of a suspected heroin overdose. An investigation by authorities revealed that a person matching Defendant's description and driving a vehicle matching Defendant's vehicle, visited a Walmart store in Coralville on March 13 and attempted to use L.M.'s EBT card. Video recordings also suggest that Defendant used the EBT card belonging to B.E. at the Walmart on April 11 and April 12.

According to the pretrial services report Defendant is 43 years old. He was born and raised in Chicago, but moved to Cedar Rapids in about 2012. Defendant has never

been married, but has a son (age 20) who resides in Chicago. Members of Defendant's extended family also reside in Chicago. Prior to his arrest, Defendant was living in North Liberty, Iowa, and told the pretrial services officer that he would return there if released. At the time of hearing, however, Defendant was suggesting that he be permitted to live with his mother in Chicago upon his release.

According to Defendant, he has worked "off-and-on" on an informal basis for most of his adult life. In addition to helping his grandfather at a funeral home in Chicago, he also worked "side jobs," such as landscaping. His last formal employment was in 2008. Defendant takes medication for high blood pressure and asthma, and also suffers from headaches caused by a bullet which remains lodged in his skull following a gunshot wound to the head as a teenager.

Defendant told the pretrial services officer that he has used marijuana on a daily basis for most of his adult life, with his last use on February 8, 2015. According to Defendant, he used cocaine once, approximately two months ago. Defendant admitted using heroin in January 2015, and told the pretrial services officer that he has used it twice per week since then.

Defendant was arrested on a number of occasions in Cook County, Illinois, between the ages of 18 and 22. Most of those charges were "stricken from the docket with leave to reinstate," with a couple being dismissed because of "finding of no probable cause."

In 1994, Defendant was convicted of possession of a controlled substance. He was subsequently found in violation of his probation, and after serving one day in jail his probation was terminated as "unsatisfactory." In 1997, Defendant was convicted twice of possession of cannabis.

On December 8, 1997, Defendant was charged in the United States District Court for the Northern District of Indiana with four drug-related offenses. Defendant was found in a vehicle which contained approximately 430 grams of crack cocaine and 110 grams of

powder cocaine. Defendant was initially placed on pretrial release, but his pretrial release was subsequently revoked. Defendant pleaded guilty to interstate travel in aid of racketeering and was sentenced on April 13, 1999 to 60 months' imprisonment. He was placed on supervised release on September 13, 2002. While on supervised release, there were five violations of supervised release filed. Defendant's supervised release was not revoked, however, and he was discharged on May 24, 2006.

On June 11, 2008, Defendant was charged in Outagamie County, Wisconsin, with possession of cocaine and possession of THC. While those charges were pending, Defendant was charged in Winnebago County, Wisconsin, with five counts of manufacture/delivery of cocaine. Defendant pleaded guilty to two counts and was sentenced to 30 months' imprisonment. He was paroled in March 2011 and discharged from parole in September 2013.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of

conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or

6

alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with possession with intent to distribute heroin. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to 18 U.S.C. § 3142(f)(1)(C).

Because there is probable cause to believe Defendant committed a serious drug offense, there is a rebuttable presumption that he should be detained pending further

proceedings. The evidence against Defendant is strong. At least two witnesses will apparently testify that they purchased heroin from Defendant. Photos and text messages found on Defendant's phone apparently support that testimony. When Defendant was stopped, he was found in possession of a substantial amount of drugs, together with a substantial amount of cash.

Defendant does not have strong ties to this community. While his mother testified that Defendant could live with her, I am not convinced that she would have much influence over the behaviors of her 43-year-old son. Defendant has been sent to prison twice for drug-related convictions. He has had his pretrial release previously revoked, and it is alleged that he violated his supervised release on multiple occasions by using marijuana and failing to report for drug testing. Defendant remains an active drug user, consuming both marijuana and heroin. The Court has no confidence that Defendant would comply with any terms or conditions which it may impose for his release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained pending further proceedings. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1.     The Court finds probable cause exists that Defendant committed the crime described in the Criminal Complaint.

8

2.     The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

3.     The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

4.     On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 29th day of April, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

9